**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

|  |  |
|---|---|
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| FLORIDA CRYSTALS CORPORATION, | ) |
| SUGAR FARMS CO-OP, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union")

files this Complaint for Declaratory Relief, alleging as follows:

**INTRODUCTION**

1.       This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 to

determine and resolve questions of actual controversy involving a Business Aircraft insurance

policy issued by National Union to non-party "Fanjul Corp. f/k/a Flow-Sun Incorporated, et al"

("Fanjul Corp."). Under the policy, Defendant Florida Crystals Corporation ("Florida Crystals")

is a named insured. Upon information and belief, Defendant Sugar Farms Co-Op ("Sugar

Farms") is an additional named insured under the policy, by virtue of being a subsidiary or a

financially-controlled or actively-managed organization or undertaking of Florida Crystals.

2.       National Union seeks a declaration that it has no duty to defend Florida Crystals

and Sugar Farms in connection with pending litigation styled, *Date Palm Wholesalers, Inc. v.*

*Roma Air Corporation, Sugar Farms Co-Op, and Florida Crystals Corporation*, Fifteenth Judicial Circuit, Palm Beach County, Florida, Case No. 50-2013CA-016018-XXXXMB (the "Underlying Action").  A copy of the Amended Complaint filed in the Underlying Action is attached as Exhibit A.

## THE PARTIES

3.     National Union is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

4.     Upon information and belief, Florida Crystals is a corporation organized under the laws of the State of Delaware, with its principal place of business in West Palm Beach, Florida. Florida Crystals may be served with process by serving its Registered Agent in Florida, Armando A. Tabernilla, One North Clematis St., Suite 200, West Palm Beach, Florida 33401.

5.     Upon information and belief, Sugar Farms is a corporation organized under the laws of Florida, with its principal place of business in West Palm Beach, Florida.   Sugar Farms may be served with process by serving its Registered Agent in Florida, Armando A. Tabernilla, One North Clematis St., Suite 200, West Palm Beach, Florida 33401.

## JURISDICTION AND VENUE

6.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).  The Court further has jurisdiction under 28 U.S.C § 2201 because National Union is seeking a declaration from this Court regarding the parties' rights and obligations with respect to a business aircraft insurance policy issued to Fanjul Corp. that lists Florida Crystals as a named insured and Sugar Farms as an additional named insured.

2

7.     An actual controversy exists within the meaning of 28 U.S.C. § 2201 because Florida Crystals and Sugar Farms have demanded a defense of the Underlying Action under this business aircraft policy issued by National Union, and National Union has agreed to provide a defense under a full reservation of rights, pending this Court's judgment.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this action seeks the application of an insurance policy delivered in this District to Fanjul Corp., Defendants reside within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District.

9.     The Court has personal jurisdiction over Defendants because Defendants are residents of this State; operate, conduct, engage in, or carry on a business or business venture in this State; have one or more offices in this State; are alleged to have committed one or more tortious acts giving rise to the Underlying Action within this State; and are engaged in substantial and not isolated activity within this State.

## THE NATIONAL UNION AND ALLIANZ POLICIES

10.     National Union issued a Business Aircraft Policy to Fanjul Corp. bearing policy no. GM 003396570-13, effective December 28, 2012 to December 28, 2013 (the "National Union Policy").  A true and correct copy of the National Union Policy is attached hereto as Exhibit B.  Particular provisions of the National Union Policy are more fully addressed below.

11.     Upon information and belief, Allianz Global Corporate & Specialty – Aviation issued an aircraft liability insurance policy to "Roma Air Corporation" bearing policy no. A3GA000400612AM, effective May 10, 2012 to May 10, 2013 (the "Allianz Policy").  Upon information and belief, the Allianz Policy provides coverage to Sugar Farms and Florida Crystals for the claims asserted against them in the Underlying Matter.  A true and correct copy of an

Additional Insured Endorsement (Endorsement No. 10) and a Certificate of Insurance (Certificate No. 006) for the Allianz Policy are attached hereto as Exhibit C.

## THE UNDERLYING ACTION

12.     The Underlying Action was filed by non-party Date Palm Wholesalers, Inc. ("Date Palm") on October 24, 2013, and Date Palm filed an Amended Complaint on February 7, 2014.  Florida Crystals, Sugar Farms, and non-party Roma Air Corporation ("Roma Air") are defendants in the Underlying Action.

13.     The Underlying Action alleges that Date Palm operates a commercial nursery in Palm Beach County, Florida for growing unique types of palm trees (date palm, Phoenix sylvestris, and Phoenix canariensis).

14.     The Underlying Action alleges that Florida Crystals is a domestic sugar producer that owns substantial acreage in Palm Beach County to grow, harvest, and process sugar cane into sugar to be sold throughout the United States.

15.     The Underlying Action alleges that Sugar Farms is an agricultural co-operative that maintains farmlands by applying pesticides, clearing land, and engaging in other standard farming operations.  The Underlying Action further alleges that Sugar Farms acts on behalf, and is a "controlled affiliate," of Florida Crystals when maintaining the various acreages owned by Florida Crystals in Palm Beach County.

16.     The Underlying Action alleges that Roma Air specializes in custom aerial applications of pesticides, many of which are contracted for by Sugar Farms.

17.     The Underlying Action alleges that, in 2007, Date Palm planted and began cultivating palm trees on a 20-acre nursery in Palm Beach County (the "Date Palm Nursery") that is surrounded by land maintained by Sugar Farms for various owners.  The Underlying

4

Action further alleges that, by the Spring of 2013, the palms had matured into trees in excess of seven feet and were on the verge of being sold on the market.

18.     The Underlying Action alleges that, on or about March 13, 2013, Sugar Farms issued a "Spray Order" to Roma Air, designating 423 acres of land for aerial spraying.  The Underlying Action further alleges that, on or about March 22 or 23, 2013, Sugar Farms provided Roma Air a map of the acreage to be sprayed, which included the Date Palm Nursery.

19.     The Underlying Action alleges that, for this aerial spraying, Sugar Farms directed Roma Air to spray on the designated acreage 158.6 gallons of an herbicide, "Roundup PowerMax," combined with 846 pounds of ammonium sulfate.

20.     The Underlying Action alleges that Roundup PowerMax has a "known," "highly effective systemic action" that "kills all plant material it touches."  The Underlying Action also alleges that ammonium sulfate is "a high toxic stimulant" that "accelerate[s] the effects of . . . Roundup."  The Underlying Action further alleges that the combination of Roundup PowerMax with ammonium sulfate is "toxic to humans and fish life and is deadly to all living plant material," and that Sugar Farms provided the specific mixture of these materials to Roma Air "for the purpose of killing all living plant material" that Roma Air sprayed.

21.     The Underlying Action alleges that Roma Air – "acting on behalf of" Defendants and in accordance with the instructions that it had received from Sugar Farms – then sprayed the designated acreage, including the Date Palm Nursery, with the Roundup PowerMax/ammonium sulfate mixture.

22.     The Underlying Action alleges, among other things, that Sugar Farms and Florida Crystals directed Roma Air to spray the Roundup PowerMax/ammonium sulfate solution "intentionally and directly" onto the Date Palm Nursery, despite the "high degree of intentional

risk of harm" that this spraying posed to Date Palm's trees, and while Roma Air, Florida Crystals, and Sugar Farms intended, knew, or should have known that the spraying would result in substantial damage to those trees. The First Amended Complaint in the Underlying Action includes at least 35 paragraphs or sub-paragraphs relating to intentional or deliberate conduct of Roma Air, Sugar Farms, or Florida Crystals in the application of this herbicide mixture to the Date Palm Nursery. *See, e.g.*, Ex. A (First Amended Complaint) at ¶¶ 15, 17-19, 21(g) & (h), 28(a) & (d), 32, 33(a) & (d), 37, 38(a) & (d), 42, 44, 48, 50, 54, 56, 59-63, 66-70, and 73-77.

23.     The Underlying Action alleges that Date Palm incurred damage as a result of the aerial spraying, including physical damage to its palm trees; lost income/profits; additional labor costs to remove dead and unmarketable palm trees; other additional costs for supplies and labor; and loss of reputation and clientele within the industry.

24.     The Underlying Action alleges three causes of action, each being asserted against Roma Air, Sugar Farms, and Florida Crystals, respectively, in separate counts: (1) negligence (Counts I-III), (2) strict liability (Counts IV-VI), and (3) trespass (Counts VII-IX).   In the Underlying Action, Date Palm seeks compensatory damages, interest, costs, and "any other damages allowed by law and reserves its right pursuant to Florida Statute 768.72 to amend its complaint upon proffer of evidence to make [a] claim for punitive damages."

<u>COUNT I</u>
<u>NO DUTY TO DEFEND</u>

**(No Allegation of An "Occurrence")**

25.     National Union restates and re-alleges Paragraphs 1-24 as though fully set forth herein.

26.     Coverage B of the National Union Policy applies, in part, to sums that the insured becomes legally obligated to pay as damages because of "Property Damage caused by an

Occurrence arising out of the use of Non-Owned Aircraft . . . by or on behalf of an Insured."  Ex. B (National Union Policy) at p. 75, Section II, Part One, "Coverage B – Liability for the Use of Non-Owned Aircraft and Temporary Substitute Aircraft."[1]  "Occurrence" is defined in the National Union Policy to mean, in part, "an accident during the policy period . . . which results in . . . Property Damage."  *Id.* at p. 72, Section I (Definitions).

27.    National Union has "the right and duty to defend any suit against an Insured seeking damages because of . . . Property Damage covered by th[e] [National Union] policy, even if any allegations of the suit are groundless, false or fraudulent."  *Id.* at p. 84, Section II, Part One, "Defense, Settlement and Supplementary Payments of Liability Claims."   The converse is also true: National Union has no duty to defend an Insured for claims alleged against it that are not covered by the National Union Policy.

28.    The Underlying Action does not allege an "Occurrence" as that term is defined in the National Union Policy to the extent that it alleges intentional or deliberate conduct on the part of Florida Crystals and Sugar Farms, including, but not limited to, directing Roma Air to "intentionally and directly" spray the Date Palm Nursery by issuing the "Spray Order" and providing Roma Air with a map of acreage to spray; selecting the composition of the Roundup PowerMax/ammonium sulfate mixture for the purpose "killing all living plant material" sprayed by Roma Air; giving these instructions to Roma Air despite the "high degree of intentional risk of harm" that this spraying posed to Date Palm's trees, and while Defendants intended, knew, or should have known that the spraying would result in substantial damage to those trees; and committing the intentional tort of trespass.  Accordingly, the National Union Policy does not

---

[1]  For ease of reference, the page number citations for Exhibit B reflect the page order of that exhibit, not any page number physically appearing on a given page.

7

provide coverage for the defense of the Underlying Action to the extent there is an absence of an alleged "Occurrence."

29.     National Union is informed and believes that Defendants nonetheless contend that the Underlying Action alleges claims for damages caused by an "Occurrence," as that term is defined in the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims alleged in the Underlying Action provide coverage for the defense of Defendants in that action under the National Union Policy.

30.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

<u>COUNT II</u>
<u>NO DUTY TO DEFEND</u>

**(Policy Exclusion for "Expected or Intended Injury")**

31.     National Union restates and re-alleges Paragraphs 1-30 as though fully set forth herein.

32.     The National Union Policy does not apply to and excludes coverage for "Property Damage expected or intended from the standpoint of the Insured."  Ex. B (National Union Policy) at p. 85, Section II, Part One, "Exclusions for Part One – Liability Coverages and Defense, Settlement and Supplementary Payments," Exclusion No. 1.

33.     The Underlying Action alleges, among other things, that Defendants directed Roma Air to "intentionally and directly" spray the Date Palm Nursery with a mixture that has a "known," "highly effective systemic action" for the purpose of "killing all living plant material,"

and that Defendants gave these instructions to Roma Air despite the "high degree of intentional risk of harm" that this spraying posed to Date Palm's trees, and while Defendants intended, knew, or should have known that the spraying would result in substantial damage to those trees. As a result, to the extent that Defendants are allegedly liable to Date Palm in the Underlying Action for "Property Damage" caused by an "Occurrence," the "expected or intended" exclusion of the National Union Policy applies, and the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

34.     National Union is informed and believes that Defendants nonetheless contend that the subject exclusion does not apply and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims in the Underlying Action provide coverage for the defense of Defendants in that action under the National Union Policy.

35.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

**COUNT III**
**NO DUTY TO DEFEND**

**(Policy Exclusion for Property Damage to Property**
**Over Which the Insured Exercises Control)**

36.     National Union restates and re-alleges Paragraphs 1-35 as though fully set forth herein.

37.     The National Union Policy does not apply to and excludes coverage for "Property Damage to property the Insured owns, rents or occupies or is loaned to, used by, transported by or in the care, custody or control of the Insured, or to which the Insured is for any reason exercising physical control."  Ex. B (National Union Policy) at p. 85, Section II, Part One, "Exclusions for Part One – Liability Coverages and Defense, Settlement and Supplementary Payments," Exclusion No. 6.

38.     The Underlying Action alleges that Florida Crystals and Sugar Farms are liable to Date Palms for trespass because, among other things, Defendants directed or allowed Roma Air to "maintain and exercise dominion and control over the date palms being grown on [Date Palm's] lands."  As a result, to the extent that Defendants are allegedly liable to Date Palm in the Underlying Action for "Property Damage" resulting from the exercise of dominion and control caused by an "Occurrence," the subject exclusion applies, and the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

39.     National Union is informed and believes that Defendants nonetheless contend that the subject exclusion does not apply and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims in the Underlying Action provide coverage for the defense of Defendants in that action under the National Union Policy.

40.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations

pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

**COUNT IV**
**NO DUTY TO DEFEND**

**(Policy Exclusion for Services Performed**
**By or on Behalf of the Insured)**

41.     National Union restates and re-alleges Paragraphs 1-40 as though fully set forth herein.

42.     Coverage B of the National Union Policy does not apply to and excludes coverage for "Property Damage which is caused by or results from . . . services performed by or on behalf of [the Insured], including any materials . . . furnished in connection with such services." Ex. B (National Union Policy) at p. 75, Section II, Part One, "Exclusions for Coverage B," Exclusion No. "a."

43.     The Underlying Action alleges that Roma Air – "acting on behalf of" Defendants and in accordance with the instructions that it had received from Sugar Farms – sprayed the Date Palm Nursery with the Roundup PowerMax/ammonium sulfate solution that Defendants had selected and instructed Roma Air to use. As a result, to the extent that Defendants are allegedly liable to Date Palm in the Underlying Action for "Property Damage" caused by an "Occurrence," the subject exclusion of the National Union Policy applies, and the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

44.     National Union is informed and believes that Defendants nonetheless contend that the subject exclusion does not apply and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy. As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims in the Underlying

Action provide coverage for the defense of Defendants in that action under the National Union Policy.

45.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

**COUNT V**
**NO DUTY TO DEFEND**

**(Policy Endorsement No. 7 Exclusion For "Pollution and**
**Contamination of Any Kind Whatsoever")**

46.     National Union restates and re-alleges Paragraphs 1-45 as though fully set forth herein.

47.     The National Union Policy does not apply to and excludes coverage for "claims directly or indirectly occasioned by, happening through or in consequence of . . . pollution and contamination of any kind whatsoever, . . . unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation." Ex. B (National Union Policy) at p. 34, Endorsement No. 7 ("Noise and Pollution and Other Perils Exclusion Clause AVN46B"), Exclusion 1(b).  The terms of Endorsement No. 7 "take precedence" over "any provisions, exclusions, conditions or terms" of the National Union Policy (*see id.* at p. 34), including the "Noise and Pollution and Other Perils Exclusion Clause" of Section III ("General Policy Exclusions") of the National Union Policy.  *See id.* at pp. 96-97.

48.     The Underlying Action alleges that Roundup PowerMax has a "known," "highly effective systemic action" that "kills all plant material it touches"; that ammonium sulfate is "a

12

high toxic stimulant" that "accelerate[s] the effects of . . . Roundup"; and that the combination of these two materials is "toxic to humans and fish life and is deadly to all living plant material." As a result, to the extent that Defendants are allegedly liable to Date Palm in the Underlying Action for "Property Damage" caused by an "Occurrence," the subject exclusion applies, and the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

49.     National Union is informed and believes that Defendants nonetheless contend that the subject exclusion does not apply and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims in the Underlying Action provide coverage for the defense of Defendants in that action under the National Union Policy.

50.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

**COUNT VI**
**NO DUTY TO DEFEND**

**(Policy Endorsement No. 7 Exclusion For**
**"Interference With the Use of Property")**

51.     National Union restates and re-alleges Paragraphs 1-50 as though fully set forth herein.

52.     The National Union Policy does not apply to and excludes coverage for "claims directly or indirectly occasioned by, happening through or in consequence of . . . interference with the use of property[,] unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation."  Ex. B (National Union Policy) at p. 34, Endorsement No. 7 ("Noise and Pollution and Other Perils Exclusion Clause AVN46B"), Exclusion 1(d).  The terms of Endorsement No. 7 "take precedence" over "any provisions, exclusions, conditions or terms" of the National Union Policy (*see id.* at p. 34), including the "Noise and Pollution and Other Perils Exclusion Clause" of Section III ("General Policy Exclusions") of the National Union Policy.  *See id.* at pp. 96-97.

53.     The Underlying Action alleges that Date Palm incurred damage as a result of the aerial spraying, including physical damage to its palm trees; lost income/profits; additional labor costs to remove dead and unmarketable palm trees; other additional costs for supplies and labor; and loss of reputation and clientele within the industry.  As a result, to the extent that Defendants are allegedly liable to Date Palm in the Underlying Action for "Property Damage" due to interference with the use thereof caused by an "Occurrence," the subject exclusion applies, and the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

54.     National Union is informed and believes that Defendants nonetheless contend that the subject exclusion does not apply and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims in the Underlying Action provide coverage for the defense of Defendants in that action under the National Union Policy.

55.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

**COUNT VII**
**NO DUTY TO DEFEND**

**(Policy Endorsement No. 13 for "Non-Owned**
**Chemical Coverage" Does Not Apply)**

56.     National Union restates and re-alleges Paragraphs 1-55 as though fully set forth herein.

57.     The National Union Policy includes an Endorsement No. 13 entitled, "Non-Owned Chemical Coverage," with a reduced liability limit of $500,000.  However, the Endorsement does not apply to and excludes coverage for "[i]njury to or damage to either property or crops being treated or intended to be treated by aerial application of chemicals . . . ." Ex. B (National Union Policy) at p. 44, Endorsement No. 13 ("Non-Owned Chemical Coverage"), Exclusion No. 1.

58.     The Underlying Action alleges that Defendants directed Roma Air to "intentionally and directly" spray the Date Palm Nursery with a mixture that has a "known," "highly effective systemic action" for the purpose of "killing all living plant material," and that Defendants gave these instructions to Roma Air despite the "high degree of intentional risk of harm" that this spraying posed to Date Palm's trees, and while Defendants intended, knew, or should have known that the spraying would result in substantial damage to those trees.

Accordingly, Endorsement No. 13 of the National Union Policy does not provide coverage for the defense of claims at issue in the Underlying Action.

59.     National Union is informed and believes that Defendants nonetheless contend that the subject Endorsement applies and that coverage for the defense of claims in the Underlying Action is afforded by the National Union Policy.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether the claims alleged in the Underlying Action are covered under the Non-Owned Chemical Coverage Endorsement to the National Union Policy.

60.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

## COUNT VIII
## "OTHER INSURANCE" PROVISION

### (The "Other Insurance" Provision of Endorsement No. 13 for "Non-Owned Chemical Coverage")

61.     National Union restates and re-alleges Paragraphs 1-60 as though fully set forth herein.

62.     The National Union Policy includes an Endorsement No. 13 entitled, "Non-Owned Chemical Coverage," with a reduced liability limit of $500,000.  However, Endorsement No. 13 states that any "[c]overage provided under this endorsement is excess over any other valid and collectible insurance available to the Insured."  Ex. B (National Union Policy) at p. 43, Endorsement No. 13 ("Non-Owned Chemical Coverage"), "Other Insurance."

63.     Upon information and belief, Defendants have other valid and collectible insurance for the claims asserted against them in the Underlying Action through the Allianz Policy.  Accordingly, any coverage provided through Endorsement No. 13 of the National Union Policy for the defense of claims asserted against Defendants in the Underlying Action is excess to any coverage afforded under the Allianz Policy, and National Union has no duty to defend the Defendants for any claim in the Underlying Action that may be covered under Endorsement No. 13 unless and until the Allianz Policy is exhausted.

64.     National Union is informed and believes that Defendants contend that the "other insurance" provision of Endorsement No. 13 has no application.  As such, an actual and present dispute exists between Plaintiff and Defendants as to whether other valid and collectible insurance is available to Defendants under the Allianz Policy for the claims alleged in the Underlying Action implicating the "other insurance" provision in Endorsement No. 13 of the National Union Policy.

65.     Inasmuch as an actual and present controversy currently exists between Plaintiff and Defendants concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, as well as reasonable attorneys' fees and costs of suit incurred by National Union.

WHEREFORE, National Union respectfully requests that the Court order a speedy hearing of this action pursuant to Rule 57 of the Federal Rules of Civil Procedure, and further enter judgment:

1.     Declaring that National Union has no duty to defend Defendants under the National Union Policy for the claims alleged in the Underlying Action on the

ground that there has been no alleged "Occurrence," as that term is defined in the National Union Policy;

2.     Declaring that National Union has no duty to defend Defendants under the National Union Policy for the claims alleged in the Underlying Action on the grounds that the claims are precluded from coverage pursuant to the exclusions for (a) "expected or intended injury," (b) Property Damage to property over which the Insured exercises control, (c) "services performed by or on behalf of [the Insured]," (d) "pollution and contamination of any kind whatsoever," and (e) "interference with the use of property";

3.     Declaring that National Union has no duty to defend Defendants for the claims alleged in the Underlying Action under Endorsement No. 13 of the National Union Policy, on the ground that the exclusion in Endorsement No. 13 for "[i]njury to or damage to either property or crops being treated or intended to be treated by aerial application of chemicals" applies;

4.     Declaring that any coverage afforded under Endorsement No. 13 of the National Union Policy for the defense of claims asserted against Defendants in the Underlying Action is excess to any coverage afforded under the Allianz Policy, and that National Union has no duty to defend the Defendants for any claim in the Underlying Action that may be covered under Endorsement No. 13 unless and until the Allianz Policy is exhausted;

5.     For reasonable attorneys' fees incurred by National Union;

6.     For all costs of suit incurred herein; and

7.     For such other and further relief as this Court deems just and proper.

18

Dated: August 29, 2014

Respectfully Submitted by:

WEINBERG, WHEELER, HUDGINS
GUNN & DIAL, LLC

/s/ Todd R. Ehrenreich
TODD EHRENREICH, ESQ.
Florida Bar No.: 945900
SETH V. ALHADEFF, ESQ.
Florida Bar Number:  525235
2601 South Bayshore Drive, Suite 1500
Coconut Grove, Florida 33133
P:  305-455-9500
F:  305-455-9501