UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81134-CIV-COHN/VALLE

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    Plaintiff,

v.

FLORIDA CRYSTALS CORPORATION and
SUGAR FARMS CO-OP,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment [DE 30] ("Motion"). The Court has reviewed the Motion and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will deny the Motion.

### I. BACKGROUND

This case involves a dispute over insurance coverage in a related state-court action. Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is an insurance company. DE 1 (Complaint) ¶ 3. In late 2012, National Union issued an insurance policy (the "Policy") to a third party, Fanjul Corp. Id. ¶ 10. Defendants Florida Crystals Corporation ("Florida Crystals") and Sugar Farms Co-op ("Sugar Farms") are insured under the Policy. Id. ¶ 1.

On October 24, 2013, Date Palm Wholesalers, Inc. ("Date Palm"), sued Defendants in state court (the "Date Palm Action"). Id. ¶ 12. Date Palm operates a

commercial nursery in Palm Beach County. Id. ¶ 13. Florida Crystals and Sugar Farms own and maintain nearby sugar-cane growing and processing operations. Id. ¶¶ 14–15.

Defendants contract with a company specializing in the aerial application of chemicals, Roma Air Corp. ("Roma"), to apply herbicide at their operations. Id. ¶¶ 16, 18. The Complaint in the Date Palm Action alleges that in March 2013, Defendants directed Roma to spray a powerful herbicide on a large area of land. See DE 31-1 ("Date Palm Complaint") ¶ 15. This area included not only Defendants' operations, but also Date Palm's nursery. Id. ¶¶ 17–19. The herbicide damaged many of Date Palm's trees. Id. ¶¶ 20–22. Date Palm thus sued Defendants and Roma for negligence, strict liability, and trespass. Id. ¶¶ 25–78.

National Union subsequently commenced the instant lawsuit, seeking a declaration that the Policy imposes no duty to defend Florida Crystals or Sugar Farms in the Date Palm Action. See Compl. ¶¶ 25–65. National Union's Complaint advances numerous theories as to why the claims in the Date Palm Action fall outside the Policy's scope. On March 30, 2015, the Court granted in part a Rule 12(b)(6) motion to dismiss one of the claims in National Union's Complaint, but allowed the remainder of its claims to proceed. DE 45. National Union now seeks summary judgment in its favor on its surviving claims, and ultimately a declaration that it has no duty to defend under the Policy.

## II. **LEGAL STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

In the Motion, as in its Complaint, National Union contends that it has no duty to defend in the Date Palm Action. Under Florida law,[1] the duty to defend is an issue of law that turns upon the interpretation of the insurance policy and review of the underlying complaint. James River Ins. Co. v. Bodywell Nutrition, LLC, 842 F. Supp. 2d 1351, 1353–54 (S.D. Fla. 2012). Because the existence of a duty to defend is a legal

---

[1] The parties appear to agree that Florida law governs the existence of a duty to defend under the Policy. See DE 30 at 3; DE 39 at 4.

question, it is amenable to resolution on a motion for summary judgment. Id. The duty to defend arises when the underlying complaint alleges facts that potentially bring a dispute within the policy's coverage. Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442–43 (Fla. 2005). On the other hand, where the allegations in the underlying complaint "show that no coverage exists or a policy exclusion applies, no duty to defend arises." James River Ins. Co., 842 F. Supp. 2d at 1354 (citing Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc., 771 F. Supp. 2d 1336, 1344 (S.D. Fla. 2011)). Any doubt regarding the duty to defend is resolved in favor of the insured. Miranda Constr. Dev., Inc. v. Mid-Continent Cas. Co., 763 F. Supp. 2d 1336, 1339 (S.D. Fla. 2010). However, where a policy exclusion unambiguously applies, it must be enforced. Id.

### III.  DISCUSSION

In its Motion, National Union advances several arguments for summary judgment on its claims that it owes Defendants no duty to defend in the Date Palm Action. National Union contends that the Date Palm Complaint alleges no accident that could give rise to coverage under the Policy, and that the claims in the Date Palm Action come within the scope of the Policy's various exclusions. However, the Date Palm Complaint does plead an accident. National Union also has not established the applicability of the many exceptions it has raised. Accordingly, National Union's request for summary judgment will be denied.

####  A.  The Date Palm Complaint Alleges an Accident that Could Give Rise to an "Occurrence"

National Union first contends that it owes no duty to defend because the Date Palm Complaint does not rest upon an accident. As relevant here, the Policy covers

4

damage caused by an "occurrence" arising out of the use of certain aircraft. DE 31-2 at 18. The Policy defines an occurrence as "an accident during the policy period . . . ." Id. at 15. National Union argues that the Date Palm Complaint alleges only intentional wrongdoing, thus there is no accident that could give rise to a covered occurrence. DE 30 at 4–7.

The Court has already rejected this argument in connection with Defendants' Motion to Dismiss [DE 20]. The Court adopts the conclusions of its prior Order Granting in Part and Denying in Part Motion to Dismiss [DE 45] as a basis for rejecting National Union's argument in the Motion that the Date Palm Complaint does not allege an accident.

However, the Court takes this opportunity to note that the Date Palm Complaint contains allegations of accidental harms in addition to those relied upon in the Court's prior order on the Motion to Dismiss. Paragraph 21(h) of the Date Palm Complaint states that the spraying of Date Palm's property arose from a failure to investigate the ownership of the property. Though not pled with exacting clarity, this allegation can plausibly be read as attributing the failure of investigation to Defendants, in addition to Roma. Date Palm premises its negligence claims in part upon the resulting mistaken designation of its property among the land to be sprayed with herbicide. Date Palm Compl. ¶¶ 32, 33(a), 37, 38(a). In other words, Date Palm alleges not only that negligence was involved in the act of spraying its property with herbicide, but also that the designation of its property for spraying was an accident.

The case of State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So. 2d 1072 (Fla. 1998) ("CTC"), is instructive on this point. In CTC, an insured architect

5

built a house too close to lot boundaries, in violation of restrictive covenants. The architect's construction of the house was an intentional act, however he constructed the house under the mistaken presumption that he had received a variance to build closer to the lot boundaries than would otherwise be allowed. Id. at 1073. A dispute over insurance coverage for damages arising from the improperly located house ensued.

The relevant insurance policy in CTC provided coverage only in the event of an "occurrence," which was defined as an "accident." Id. The CTC policy, like the Policy herein, did not further define the term "accident." Id. The Supreme Court of Florida held that where the "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." Id. at 1076. The court then applied this definition to the architect's conduct. The court found that, viewing the facts most favorably to the insured, the architect "did not expect or intend for damages to result from his act of constructing the home," despite having intentionally constructed the building. Id. In other words, mistakenly building the house too close to the property lines was an accident supporting coverage, even if the construction of the house was intentional.

In the Date Palm Action, Defendants allegedly failed to investigate the ownership of Date Palm's property, resulting in the mistaken designation of the property for the application of herbicide. This allegation plausibly alleges a mistake giving rise to damage to property of a third party that Defendants neither expected nor intended. Therefore, as in CTC, the Date Palm Complaint pleads an "accident." That Roma intentionally sprayed herbicide on the mistakenly designated property does not require a

different outcome. See id. at 1076. The Court thus rejects National Union's argument that the Date Palm Action involves only allegations of intentional misconduct, instead of an accident that could qualify as an occurrence under the Policy.[2]

### B. National Union Has Failed to Show that Endorsements Seven and Thirteen Exclude the Claims in the Date Palm Action from Coverage

National Union next argues that the language of Endorsements Seven and Thirteen of the Policy exclude the claims in the Date Palm Action from coverage. The Court agrees with National Union that Endorsement Seven contains an applicable exclusion. However, Endorsement Thirteen appears to restore coverage for at least part of the Date Palm Action. Summary judgment on this point therefore is inappropriate.

Endorsement Seven provides that the Policy "does not cover claims directly or indirectly occasioned by, happening through or in consequence of . . . pollution and contamination of any kind whatsoever." DE 31-2 at 61. To "contaminate" means, among other things, "to soil, stain, corrupt, or infect by contact or association." Contaminate, Merriam-Webster's Collegiate Dictionary 269 (11th ed. 2004). The Date Palm Complaint seeks compensation based upon harms that arose when Date Palm's plants were covered—soiled—with herbicide. E.g., Date Palm Compl. ¶¶ 15–23. In other words, the claims alleged in the Date Palm Complaint arise from contamination of the plants. Accord Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139–41 (Fla. 1998) (construing insurance policy and determining that chemicals such as pesticides come within definition of contaminants and pollutants). The plain language

---

[2] The Court likewise rejects National Union's contention that the Date Palm Action comes within the Policy's exclusion for "Property Damage expected or intended from the standpoint of the Insured." See DE 30 at 7–11; DE 31-2 at 28.

7

of Endorsement Seven therefore excludes the claims in the Date Palm Action from the Policy's coverage.

In the Motion, National Union concedes that Endorsement Thirteen is a "buy back" that restores coverage for harms arising from the aerial application of chemicals, and which would otherwise be excluded by Endorsement Seven. DE 30 at 11–12; see DE 31-2 at 70. Endorsement Thirteen tempers this restored coverage with an exclusion for "[i]njury or damage to either property or crops being treated . . . by aerial application of chemicals." DE 31-2 at 71. National Union argues that because the Date Palm Complaint is premised on harms arising from damage to Date Palm's crops caused by the aerial application of chemicals, the claims in the Date Palm Action come within this exclusion in Endorsement Thirteen. DE 30 at 12–13.

But Date Palm does more than seek compensation for injury to property or crops being chemically treated. Date Palm also seeks lost profits resulting from the spraying. Date Palm Compl. ¶¶ 23–24. Lost profits are economic harms distinct from property damage. See Lazzara Oil Co. v. Columbia Cas. Co., 683 F. Supp. 777, 780–81 (M.D. Fla. 1988), aff'd, 868 F.2d 1274 (11th Cir. 1989). Reading the Policy in Defendants' favor, the exclusion of from coverage for injury or damage to property or crops thus does not apply to all of the relief sought in the Date Palm Complaint. Where the complaint in an underlying action contains claims both within and without the scope of coverage, an insurer's duty to defend is triggered with respect to the entire action. Regions Bank v. Commonwealth Land Title Ins. Co., 977 F. Supp. 2d 1237, 1259 (S.D. Fla. 2013) (collecting cases). Because Endorsement Thirteen creates coverage for the claims in the Date Palm Complaint, and the exclusions within that Endorsement do not

8

appear to remove coverage for all of those claims, the Court rejects National Union's argument for summary judgment on the duty to defend in relation to the exclusion in Endorsement Thirteen.

### C. National Union Has Not Shown that Defendants Exercised Control over the Damaged Property

The Policy also excludes coverage for "Property Damage to property . . . in the . . . control of the Insured, or to which the Insured is for any reason exercising physical control." DE 31-2 at 28. National Union argues that Defendants exercised physical control over Date Palm's property when Roma sprayed herbicide onto Date Palm's plants, triggering the Policy's exclusion for damage to property in Defendants' control. DE 30 at 13–15. However, it is far from clear that the act of spraying herbicide onto plants is the exercise of control. In light of this uncertainty, National Union is not entitled to summary judgment on the applicability of the exclusion for damage to property under Defendants' control.

Florida's courts have interpreted "control" in the context of similar insurance exclusions to refer to some possessory control over the property at issue. See Shankle v. VIP Lounge, Inc., 468 So. 2d 548, 549 (Fla. 5th DCA 1985). Likewise, the common meaning of "control" implies some sort of dominion over the subject of the control. See generally Control, Merriam-Webster's Collegiate Dictionary 272 (11th ed. 2004). Here, Date Palm does not allege that Defendants ever possessed or controlled its property in the everyday sense of those words. Instead, it has alleged that Defendants' agent merely flew over Date Palm's land spraying chemicals. Whether these allegations are sufficient to establish that Defendants were in control of Date Palm's property at the time of the spraying is debatable. Where, as here, the applicability of an exclusion is

uncertain, the insurer is not relieved of its duty to defend. WPC Indus. Contractors, Ltd. v. Amerisure Mut. Ins. Co., 720 F. Supp. 2d 1377, 1380 (S.D. Fla. 2009).

In support of its argument that the "control" exclusion applies, National Union invokes allegations in the Date Palm Complaint that Defendants acted through Roma to "maintain and exercise dominion and control over the date palms being grown on [Date Palm's] lands." DE 30 at 15 (quoting Date Palm Compl. ¶¶ 66, 73). However, the duty to defend depends on the facts alleged in the underlying complaint, and not the legal labels and conclusions the underlying plaintiff has attached to its facts. See, e.g., Doe v. OneBeacon Am. Ins. Co., No. 11-00275, 2014 WL 5092258 at *10–12 (N.D. Fla. Oct. 9, 2014); Founders Ins. Co. v. Cortes-Garcia, No. 10-02286, 2012 WL 2505917 at *6 (M.D. Fla. June 28, 2012). Date Palm's allegations that Roma exercised "dominion and control" over Date Palm's property are legal conclusions relating to its trespass claims and are entitled to no deference. In contrast, whether Roma's alleged spraying of herbicide on Date Palm's plants from above represented the exercise of control over the property is arguable. National Union therefore is not entitled to summary judgment on the applicability of the exclusion relating to damage to property under Defendants' control. See WPC Indus. Contractors, Ltd., 720 F. Supp. 2d at 1380.

### D. Endorsement Thirteen Overrides the Policy's Exclusion for Services Performed "On Behalf" of Defendants

National Union next argues that an exclusion in the Policy for harms arising from services performed "on behalf" of the insured removes the claims in the Date Palm Action from coverage. The Date Palm Complaint alleges that Roma sprayed herbicide on Date Palm's plants at Defendants' direction. It premises Defendants' liability on an agency theory, in that Roma was allegedly acting on Defendants' behalf when it sprayed

10

Date Palm's property. Date Palm Compl. ¶¶ 30–39, 46–57, 65–78. However, Coverage B of the Policy excludes from its scope "Property Damage which is caused by or results from . . . services performed by or on behalf of" the insured. DE 31-2 at 18. National Union argues that the allegations of the Date Palm Complaint fall within this exclusion.

The parties devote the bulk of their papers on this point to arguing whether Roma was acting on Defendants' behalf when it sprayed Date Palm's plants. However, even assuming that Roma was acting on Defendants' behalf, this exclusion fails to remove the claims in the Date Palm Action from coverage. The reason is that the coverage established by Endorsement Thirteen—which appears to apply to at least part of the claims in the Date Palm Action (see supra pp. 7–9)—overrides the exclusion.

Endorsement Thirteen extends Coverage B to include the aerial application of chemicals "of benefit to or of direct use in the business of" Defendants. DE 31-2 at 70. This explicit addition of coverage for the aerial application of chemicals in the course of Defendants' business conflicts with Coverage B's exclusion of claims for damage resulting from services performed on Defendants' behalf. Where an endorsement conflicts with the body of an insurance policy, the endorsement controls. Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London, 696 So. 2d 376, 379 (Fla. 1st DCA 1997). The Court therefore reads Endorsement Thirteen, where applicable, as trumping the Policy's exclusion for services performed on behalf of the insured. Because Endorsement Thirteen appears to create coverage for a portion of the claims in the Date Palm Action, the Policy's exclusion for services performed on Defendants' behalf does not relieve National Union of a duty to defend.

### E. The Excess Other Insurance Clause in the Policy Is Rendered Ineffective by the Allianz Policy

Finally, National Union argues that the excess other insurance clause in Endorsement Thirteen relieves it of any duty to defend in the Date Palm Action. Endorsement Thirteen contains the following provision that is commonly referred to as an "excess other insurance" clause: "Coverage provided under this endorsement is excess over any other valid and collectible insurance available to the Insured." DE 32-1 at 70. National Union contends that an insurance policy issued to Roma by Allianz Global Corporate & Specialty - Aviation ("Allianz Policy"), which lists Sugar Farms as an additional insured, applies to the claims in the Date Palm Action. DE 30 at 17–18; see DE 31-3 at 2–3. Because coverage is available under the Allianz Policy, National Union argues that its own Policy's excess other insurance clause relieves it of any duties to Defendants until coverage under the Allianz Policy is exhausted.

However, the Allianz Policy also contains an excess other insurance clause: "Coverage provided under this endorsement . . . is excess coverage only and applies only after all other coverage available to the Insured has been exhausted." DE 31-3 at 3. Where two insurance policies contain conflicting excess other insurance clauses, those clauses cancel one another out. Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc., 613 F. Supp. 2d 1310, 1319–20 (M.D. Fla. 2009); Twin City Fire Ins. Co. v. Fireman's Fund Ins. Co., 386 F. Supp. 2d 1272, 1279 (S.D. Fla. 2005), aff'd, 200 F. App'x 953 (11th Cir. 2006). Accordingly, the excess other insurance provisions in the Allianz Policy and National Union Policy render one another inert, and the excess other insurance clause in the Policy does not relieve National Union of a duty to defend. See 14 Couch on Insurance § 200:35 (3d ed. 2014).

## IV. CONCLUSION

In sum, National Union has not shown its entitlement to summary judgment on the absence of a duty to defend in the Date Palm Action. The Date Palm Complaint alleges accidental harms that could qualify as an "occurrence" giving rise to coverage under the Policy. Though a number of the Policy's exclusions might have applied to claims in the Date Palm Action, Endorsement Thirteen restores coverage at least for parts of those claims. The Court also rejects National Union's argument that Defendants necessarily exercised "control" over Date Palm's property when Roma sprayed herbicide on it from above. Finally, the excess other insurance clause in the Policy does not relieve National Union of a duty to defend in light of a similar provision in the Allianz Policy. The Court thus will deny the Motion.

The Court further notes that Defendants have filed supplemental briefs subsequent to their Response to the Motion without first seeking leave of the Court, in violation of Local Rule 7.1(c). See DE 41 ("Supplemental Response"); DE 43 ("Final Response"). The Court has not considered these briefs in reaching its determinations; National Union's request to strike those improper additional briefs will be denied. See DE 44. Similarly, because the Court resolves the Motion in Defendants' favor, Defendants' own request to strike portions of the Motion (see DE 48) will be denied as moot. It is accordingly

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [DE 30], Plaintiff's Motion to Strike Unauthorized Briefs Filed by Defendants and Motion for Entry of Unopposed Summary Judgment [DE 44], and Defendants' Motion to Strike Portions of Plaintiff's Motion for Summary Judgment [DE 48] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of May, 2015.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF