UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-81134-CV-COHN/SELTZER

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

                Plaintiff,
vs.

FLORIDA CRYSTALS CORPORATION,
SUGAR FARMS CO-OP

                Defendants.
_____/

## DEFENDANTS, FLORIDA CRYSTALS CORPORATION & SUGAR FARMS CO-OP RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

COME NOW, the Defendants, Florida Crystals Corporation and Sugar Farms Co-Op, by and through their undersigned counsel and hereby file their Response in Opposition to Plaintiff's Motion for Protective Order [D.E. 108], dated February 19, 2016, and state as follows:

### INTRODUCTION

Plaintiff seeks a blanket protective order precluding four (4) depositions scheduled by these defendants. Plaintiff incorrectly asserts that the discovery being sought is simply an effort to conduct a fishing expedition...harass Plaintiff and its representatives, and impose undue burden and expense simply for the purpose of determining whether something of value "may or may not show up". *(See Motion for Protective Order, Page 10)*. In its conclusion to the Motion for Protective Order, Plaintiff asserts:

"In sum, the information sought from the deponents is irrelevant to this coverage action, calls for improper legal conclusions, and is otherwise protective by the work production doctrine and attorney-client privilege". *(See Motion for Protective Order, Page 11)*.

Unfortunately, the factual assertions made by Plaintiff in its motion are inaccurate, and the alleged basis for the blanket protective order fails to recognize the actual pleadings between the parties and also completely contradicts the blanket discovery which plaintiff propounded to these Defendants; seeking communications, documents and file handling by these Defendants related to the underlying action. For example, Plaintiff propounded a comprehensive and extensive Request for Production to Defendants on November 9, 2015. *A copy of that Request is attached as **(Exhibit "A")***. That Request literally sought all correspondence between the parties in this action, but clearly

intended to solicit communications concerning the underlying action, from January 1, 2013 through the present. In addition, Paragraph 7 of the Request to Produce seeks all correspondence authored by William Tarr (an in-house attorney for these Defendants) relating to any coverage issue. Furthermore, Paragraph 10 of the Request seeks, "all correspondence related to the underlying action". The gist of Plaintiff's broad, sweeping Request for Production is to gather virtually every piece of paper that has been authored either by these Defendants or sent to them, related to the underlying action. However, Plaintiff in its Motion for Protective Order claims that attempting to depose individuals who have authored many of the letters sent to these Defendants concerning the ongoing insurance dispute is irrelevant as the only relevant evidence is the evidence relating to matters in the underlying action (which is what Defendants are attempting to discover through appropriate questioning) and the insurance policy at issue. Plaintiff cannot have it both ways. On the one hand, they accuse these Defendants of going on a fishing expedition, but on the other hand, Plaintiff is necessarily conducting a fishing expedition and has sought literally thousands and thousands of pages of documents from these Defendants (which have been produced).

In Paragraph 9 of its Motion for Productive Order, Plaintiff accuses Defendants of unilaterally noticing the depositions at issue. That simply is not true and distorts what has transpired between the parties. Contrary to Plaintiff's assertion, these Defendants initially began seeking the deposition of Plaintiff's Corporate Representative almost ten (10) months ago. When Defendants filed their Notice of Taking Deposition Duces-Tecum of Plaintiff's Corporate Representative [D.E. 56], the undersigned counsel wrote to Plaintiff's counsel and indicated that he would cooperate with changing the deposition date or time or location, but the parties had to be cognizant of the discovery cut-off that existed at that time, which was fast approaching. *(See email dated May 13, 2015, attached as **Exhibit "B"**).*

At the same time as Defendants noticed Plaintiff's Corporate Representative for Deposition, it requested of Plaintiff that the parties agree on a mediator and date. Plaintiff tried to avoid a mediation. Indeed, when the Court entered its Order on November 3, 2014 [D.E. 18] ordering a mediation, Plaintiffs immediately filed a Motion to Vacate the Order Requiring Mediation and therein asserted that a mediation would serve no purpose unless Defendants agreed that National Union did not have a duty to defend the underlying action. Such a request was clearly not made in good faith, and was certainly proven to be without merit when the Court entered the Partial Judgment on the Pleadings finding that Plaintiff clearly had a duty to defend the underlying action. [D.E. 96] That motion illustrates the obstructionist behavior that has occurred throughout this case. This Court immediately, the next morning, entered an Order [D.E. 23] denying Plaintiff's Motion to Vacate Order Requiring Mediation [D.E. 22]. Defense counsel wrote Plaintiff's counsel on May 13 and May 18, 2015 seeking cooperation in scheduling the mediation that had been ordered the previous November, but failed to receive any constructive response. It was not until defense counsel wrote a third time, on May 28, 2015 seeking cooperation in scheduling the mediation that Plaintiff's counsel finally agreed, but with the requirement that Plaintiff would agree to a mediation setting (which had been Court ordered twice) but only if Defendants cancelled the Corporate Representative's deposition scheduled for June 16, 2015. *(See attached email communications between Plaintiff and Defense counsel attached as **Exhibit "C"**).* Defense counsel did file a Notice

of Cancellation so as to move forward with the scheduling of the Court ordered mediation.

Because of other matters occurring in this case and the attempts to settle the underlying action during the fall of 2015, Plaintiff's Corporate Representative's deposition was not rescheduled in late 2015. However, in January 2016, Defendant's counsel advised Plaintiff's counsel that he wished to reschedule the Corporate Representative deposition, along with other depositions. Plaintiff would not agree to the scheduling of any of the depositions, and accordingly Defendants moved forward and scheduled the four (4) depositions at issue. Otherwise, the issue would have been at a stalemate and without existent deposition notices, defense counsel did not believe it procedurally correct to file a Motion to Compel depositions. Thus, the noticing of these depositions was done in an effort to move forward with discovery and seek a resolution of the "disagreement". And, as Plaintiff apparently had intended all along, Plaintiff exercised its right to file a Motion for Protective Order.

When defense counsel scheduled the depositions at issue, especially given the broad ranging and all encompassing Request for Production that Plaintiff had recently propounded to Defendants, defense counsel had an email exchange with Plaintiff's counsel where he requested that Plaintiff reconsider its position concerning refusing any depositions to be scheduled and also indicated, as he had done in May 2015, that if Plaintiff wanted any changes in the dates, times or locations of any of the depositions, those changes would be made to accommodate Plaintiff's request. Plaintiff responded by holding firm to what he had previously advised defense counsel that he *does not believe that any depositions are relevant. (See email exchange attached as **Exhibit "D"**).*

In sum, contrary to Plaintiff's assertion in its motion that Defendants' counsel is acting unilaterally, and seemingly unprofessionally, Defendants have repeatedly attempted to cooperate with Plaintiff in seeking what Defendants believe are relevant depositions. And, as noted, since Plaintiff recently propounded extensive discovery requests to Defendants which sought not simply expert reports, all deposition and hearing transcripts and documents concerning damages and claims being asserted in the underlying action, but virtually every piece of correspondence that was generated in the underlying action (several thousand pages of documents have now been produced to Plaintiff), Defendants reasonably expected that Plaintiff would reconsider its obstructionist pattern.

### ARGUMENT AND LEGAL MEMORANDUM

Plaintiff acknowledges in its Motion for Protective Order that its Complaint for Declaratory Relief [D.E. 1], only sought a declaration that it had no duty to defend Defendants in the underlying action. *(See Paragraph 2 of the Motion).* Consistent with that position, when Plaintiff's Motion to Vacate Order Requiring Mediation [D.E. 22] was filed on November 17, 2015, Plaintiff alleged that "Because this declaratory judgment action concerns Plaintiff's duty to defend, there is no possibility of a settlement between the parties - there either is or is not a duty to defend". *(See Paragraph 3 of that Motion).* Significantly, Plaintiff further argued in its Motion [D.E. 22], "It is National Union's position that this Court can dispose of this matter through summary judgment without the need for any discovery". *(See Paragraph 4 of the Motion).* There are two important points arising from these

arguments being furthered by Plaintiff and which relate to whether discovery depositions are appropriate in this matter.  First, if a party takes an unreasonable position, they will suffer the consequences of those actions.  Secondly and most telling, this Plaintiff acknowledges that it has never sought a court declaration concerning the duty to indemnify.  Instead, Plaintiff took an untenable position concerning the duty to defend, and even when the Court rejected those arguments, Plaintiff did not alter course but continued to bury its head in the sand and breach its duties to its insureds.  To this day, Defendants' insurance carrier to whom it paid substantial premiums, has stood silent while Defendant's were forced to pay on their own over $1,000,000 to settle the Date Palm litigation, so as to avoid a possible multi million dollar verdict in that underlying action.  Thus, the Defendant's insurance company has never sought a definitive resolution on whether the insurance policy at issue provided any coverage for any portion of the damages asserted in the underlying action.  Instead, despite the carriers contractual, common law and statutory obligations to these Defendant's , it has done nothing.

On the other hand, Defendants' Answer to Plaintiff's Declaratory Complaint and Defendants' Counterclaim [D.E. 50], raised far broader legal issues between the parties.  As Plaintiff knows from Defendants' recent discovery production, these Defendants incurred legal fees in the underlying action during the time frame awarded by the Court in the amount of $505,712.01.  Defendants also incurred costs during the allowable time period in the amount of $47,260.60.  Therefore, the total amount of fees and costs incurred by Defendants in the underlying action is $552,972.61.  However, it is very significant and important to realize that the Court's Order of January 19, 2016 did not award Defendants all of their fees and costs.  The Court allowed legal fees and costs during a specified time frame.  Defendants respectfully believe that they will be able to prove, through appropriate and relevant discovery, that Plaintiff should be responsible for all of the legal fees incurred by Defendants in the underlying action.

Defendants filed sixteen (16) specific Affirmative Defenses to Plaintiff's Declaratory Complaint.  Admittedly, some of those affirmative defenses raised legal arguments that went beyond the narrow Declaratory Complaint that Plaintiff filed.  Defense counsel incorrectly assumed that since the underlying action was nearing a trial, the carrier would amend its narrow Declaratory Action to seek a court determination on the issue of indemnification under the policy.  Or alternatively, since the carrier had not sought a declaration relating to coverage in the instant action, the carrier would file a Motion to Intervene in the state court underlying action and seek special interrogatory verdict questions which would resolve any coverage questions.  The carrier did nothing, leaving the insured exposed and forced to settle the underlying action with its own funds.

Many of the above referenced Affirmative Defenses assert specific legal defenses which arguably will lay the foundation for Defendants to pursue a broader scope of damages as part of its Counterclaim.  And, as Plaintiff is aware from its receipt of the Confidential Settlement Agreement entered into in the underlying action, these Defendants paid in excess of one million dollars to reach a settlement with the Date Palm Plaintiff.  Plaintiff, National Union, only had $500,000.00 in liability coverage, which it has continued to refuse to tender.  Frankly, the carrier has done nothing to address its contractual, common law and statutory obligations relating to the coverage that

Defendant's purchased. Accordingly, these Defendants filed their aforementioned Counterclaim which contained extensive allegations concerning communications between Defendants and Plaintiff relating to the underlying action and Defendants position as to why Defendants asserted that National Union had coverage for the loss alleged in the underlying action. That Counterclaim also contained several exhibit attachments of correspondence, which relate to the depositions that Defendants have attempted to schedule. In its Affirmative Defenses and Counterclaim, Defendants have alleged that they have been prejudiced by the Plaintiff's failure to properly investigate the facts in the underlying action and to render a timely decision concerning providing a defense and coverage to Defendants in the underlying action and acknowledge that coverage existed for the damages being claimed in the underlying action. Defendants also asserted various estoppel claims against Plaintiff and asserted that Plaintiff's handling of the instant claim constituted bad faith claims handling, all resulting in damages to these Defendants. Finally, Defendants repeatedly have asserted in their Affirmative Defenses and their Counterclaim that the actions of Plaintiff herein violated Florida Statute §627.426(2).

Defendants assert, and believe that Plaintiff would not deny, that there were literally hundreds of communications between Plaintiff and the Defendants from the inception of the claim in the underlying action until the conclusion of the underlying action. Who knew what, when, and what did they do with that information, is relevant to the Affirmative Defenses and Counterclaim of Defendants. Frankly, Plaintiff's Declaratory action is now moot since Plaintiff admits that it only sought a declaration on the duties to defend and the Court has resolved that issue. Therefore, the issue on the blanket Motion for Protective Order sought by Plaintiff is whether any of the Affirmative Defenses or the Counterclaim raised by Defendants result in the requested depositions being relevant. Federal Rule of Civil Procedure 26(b)(1) provides that, "parties may obtain discovery regarding any non-privileged matter that is relevant to **any** party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter". *Diamond State Ins. Co.*, 2001 WL 146837, 2011 U.S. Dist. LEXIS 5807 (S.D. Fla. January 18, 2011).

Plaintiff relies on the *Diamond States* decision to support its position that this Court should not permit a corporate representative deposition of the carrier. Plaintiff's reliance on that decision is misplaced. There are several key factors which distinguish Diamond States from the instant case. In Diamond States, the carrier had filed a declaratory action seeking a Court determination on whether or not the applicable insurance policy provided coverage for its insureds. In Diamond States, the insurer argued that the interpretation of its policy by the insurer's corporate representative was not relevant. In our case, the insurer has not sought any declaratory relief concerning the coverage under the applicable policy. That issue has only been framed by these Defendants in their Affirmative Defenses and Counterclaim. Furthermore, the depositions being sought by these Defendants do not concern how these employees of the insurance company interpreted the policy, but instead those depositions seek testimony concerning who knew what, when did they know it and what did they do with it. This discovery relates to the Plaintiff's contractual, common law and statutory duties to its insured.

In the *Diamond States* case, the Court determined that the depositions were not necessary since it could resolve the dispute about coverage based upon the plain language of the policy, without resort to extrinsic evidence. In distinction, in our case, although Plaintiff has never raised this issue properly in a declaratory action concerning coverage, Plaintiff has asserted that another insurance policy, issued by Allianz, insured these Defendants and was primary coverage for the claimed damages in the underlying action. Plaintiff apparently has taken that position in correspondence despite the fact that it has been provided correspondence from Allianz denying that these Defendants were insureds and further denying that these Defendants were entitled to any coverage under the Allianz policy. Thus, as can been seen, our case is different from *Diamond States*. In our case, we must resort to extrinsic evidence to address the issues raised by the Defendants in their Affirmative Defenses and Counterclaim. These Defendants have every right to depose these corporate witnesses to determine whether the Plaintiff's representatives were in possession of the relevant facts upon which they should have made a decision concerning these Defendants available insurance coverage. Unfortunately, as noted above, Defendants' insurance carrier has done nothing to resolve the coverage questions but has left the Defendants "high and dry". Thus, Defendants are not involved in a narrow declaratory action concerning coverage, such as in *Diamond States*, but are involved in a broader and very significant claim against their insurer that the insurer has completely abandoned them and caused significant damages, in excess of a million dollars.

Furthermore, in *Diamond States*, the Court clarified that the only issue was whether there was coverage under the relevant policy. *Id.* at 4. The *Diamond States* Court went on to note that there were no allegations or assertions of any bad faith activity by the carrier, no allegations of misrepresentation or fraud which would necessitate a corporate representative deposition. To the contrary, these Defendants have specifically asserted that their insurance carrier has completely abandoned them, breached its contractual, common law and statutory duties to its insureds and has violated Florida Statute 627.426. The allegations in the Counterclaim and Affirmative Defenses raised by these Defendants, necessitate a corporate deposition.

In its ongoing attempts to obstruct discovery and a resolution of the available insurance coverage for the Defendants, Plaintiff cites to Federal Rule of Civil Procedure 26(c) indicating that a Court may issue an Order to protect the party from annoyance, embarrassment, oppression or undue burden or expense. Citing *Diamond States*. But, Plaintiff goes on to cite the *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.* case, 310 F.R.D. 523, (S.D. Fla. 2015), to argue that before a party may seek to depose a corporate officer, it must first establish that the officer has unique, non-repetitive and firsthand knowledge of the facts at issue and also that other less intrusive means of discovery have been exhausted without success. As everyone knows, this an argument that concerns scheduling the depositions of high ranking officials and is typically referred to as an apex deposition. Plaintiff cannot seriously attempt to argue that Defendants' attempts to schedule claims representatives and a vice president of claims who signed interrogatories constitute apex depositions. This is simply another indication of the desperate attempts by Plaintiff to obstruct progress in this case, and to prevent these Defendants from obtaining the insurance coverage for which they have paid, and to which they are entitled.

Plaintiff also argues that an attempt to depose opposing counsel in the midst of ongoing proceedings is generally offensive to the adversarial system, citing the *Scottsdale Ins. Co. v. Camara De Comercio Latino-Americana De Los Estados Unidos, Inc.* case, 813 So.2d 250, 251 (Fla. 3d DCA 2002).  Plaintiff's reliance on *Scottsdale* is misplaced.  In that case, the insurance carrier retained defense counsel to defend its insured in a premises liability claim.  The personal injury action at trial was bifurcated into liability and damages.  The liability portion of the trial concluded with a final judgment of liability against the insured.  Prior to the damages portion of the case being tried, and while the attorney retained by the carrier was still defending the insured, Scottsdale filed a declaratory action seeking a declaration that there was no coverage for the liability of its insured.  Scottsdale then sought to schedule the deposition of the defense attorney that it had retained to defend its insured.  It was that deposition that the Court did not allow.

The facts in the instant case are quite different.  In this case, the carrier has never sought a declaration concerning the coverage issues relating to these Defendants' coverage for the damages being sought in the underlying action.  Indeed, unlike in *Scottsdale*, Plaintiff herein refused to defend its insureds and filed a declaratory complaint solely seeking a Court declaration that it had not duty to defend.  And, while abandoning its insureds, Plaintiff herein did retain counsel to investigate and assist Plaintiff with its apparent attempt to develop excuses for why it did not have coverage.  Significantly, although Plaintiff hired a lawyer, it never sought any legal determination on the coverage issue.  The attorney that Defendants seek to depose is located in Atlanta, Georgia and had an ongoing dialogue with the attorney retained by Defendants in the defense of the underlying action.  The evidence and information that was communicated between those counsel is very relevant to these Defendants' Affirmative Defenses and the Counterclaim.  The instant action is currently being defended by the Miami office of the Weinberg, Wheeler firm.  And, although Plaintiff's law firm has no fewer than five (5) members of the firm that receive electronic mailed copies of all pleadings, the intended witness, Thomas Strueber, is not one of those lawyers.  Plaintiff elected to have a lawyer involved in the pre-suit investigation of the claim ultimately resulting in the underlying action and Plaintiff elected to continue to have another office of that firm prosecute a claim trying to escape the carrier's duty to defend its insureds.  Actions of that type by an insurance carrier should not be permitted by this Court, and it is absolutely appropriate and relevant for the deposition of that counsel to be taken.

Defendants acknowledge that Plaintiffs have a technical argument that the deposition of Jeffrey David Sheets has been improperly noticed.  Defendants' notice indicates that Mr. Sheets deposition is being taken pursuant to Rule 30(b)(6).  Defendants acknowledge that under the applicable Rule, the party may notice a 30(b)(6) deposition, but the corporate organization then designates which person has the most knowledge and will testify.  Defendants sought to take the deposition of Mr. Sheets as he is the corporate representative that signed the evasive interrogatory answers provided by National Union.  Defendants respectfully request that the Court deny Plaintiff's Motion for Protective Order as to Mr. Sheets, but require the Defendants to re-notice Mr. Sheets as a witness, without reference to Rule 30(b)(6).  Defendants, however, wish to be clear that the reason for taking Mr. Sheets' deposition is the interrogatory answers to which Mr. Sheets swore as being true.

## **CONCLUSION**

Given that the Plaintiff in this action has not sought a declaration concerning coverage, and that the Defendants have sought to address the issues concerning the carrier's contractual, common law and statutory obligations to these Defendants, given the scope of discovery, Defendants believe that the requested depositions are relevant and appropriate. It is not reasonable for Plaintiff to assert that these Defendants are on a fishing expedition or that these depositions are being scheduled merely to burden, harass and cause undue expense for the Plaintiff. Nothing could be further from the truth. These Defendants simply want to ask relevant questions concerning why this carrier has completely failed to address the insurance coverage that Defendants believe should have been available to them. Under Florida law, Plaintiff had a duty to these Defendants to promptly and appropriately investigate all of the facts and make a decision within a reasonable time on whether the carrier had a duty to defend these Defendants in the underlying action and whether these Defendants, as insureds, had insurance coverage available to them for the damages being claimed in the underlying action. Since we know that Plaintiff did nothing to address the coverage issue, but instead quickly filed a declaratory action attempting to get a Court declaration that it had no duty to defend, the requested depositions are appropriate.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 26th day of February, 2016, I electronically filed the foregoing Defendants, Florida Crystals Corporation and Sugar Farms Co-Op's Response in Opposition to Plaintiff's Motion for Protective Order with the Clerk of the United States District Court, Southern District of Florida using the Court's CM/ECF system which will send notification of such filing to parties and counsel of record identified on in the below Service List.

*Respectfully submitted,*
C. BROOKS RICCA, JR. & ASSOCIATES, P.A.
***Counsel for Defendants***
1615 Forum Place, Suite 200
West Palm Beach, FL 33401
Phone: 561-833-4544/Fax: 561-833-4524


By     /s/ C. Brooks Ricca, Jr.
           C. Brooks Ricca, Jr., Esquire
           Florida Bar #: 265632
           Email: bricca@riccalawyers.com

**Service List**
*Todd R. Ehrenreich, Esq.*
(Email: tehrenreich@wwhgd.com)
    -and-
*Seth V. Alhadeff, Esq.*
(Email: salhadeff@wwhgd.com)
    -and-
*Alexander Heydemann, Esq.*
(Email: aheydemann@wwhgd.com)
**Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC**
*Attorneys for Plaintiff*
2601 S. Bayshore Dr., Suite 1500
Coconut Grove, FL 33133
Phone:    305-455-9500
Fax #:    305-455-9501